UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GLYCOBIOSCIENCES, INC., <br><br> Plaintiff, <br><br> v. <br><br> VICHY LABORATORIES, S.A. and <br><br> L'ORÉAL, S.A. <br><br> Defendants. | Civil Action No. 22-1264 (BAH) <br><br> Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Glycobiosciences, Inc., a Canadian cosmetic and pharmaceutical company, owns two patented formulae that are allegedly being infringed by Vichy Laboratories, S.A. and L'Oréal, S.A. (collectively, "defendants").[1] Plaintiff sued defendants, alleging claims of patent infringement. *See* 35 U.S.C. §101 *et. seq*. Defendants now move to dismiss, claiming, *inter alia*, that personal jurisdiction is lacking over them in this judicial district. For the reasons below, defendants' motion to dismiss is granted, without prejudice.

**I.  BACKGROUND**

The relevant factual and procedural background is summarized below.

**A. Factual Background**

---

[1] Vichy Laboratories S.A. is named as a defendant in this action, but defendants clarify that no entity with that name exists and that an entity named "Vichy LLC" is wholly owned by L'Oréal USA with "Vichy" used as a brand name. Defs.'Mot. at 5 (explaining that "Vichy" is "a brand used by L'Oréal USA and there is a separate LLC—named Vichy LLC—for that brand. L'Oréal USA is the only member of Vichy LLC and the LLC has no employees or operations."). Plaintiff concedes that Vichy Laboratories S.A. does not exist, and Vichy LLC is merely part of L'Oréal USA. *See* Pl's Opp'n at 1 n.1 ("Defendant Vichy Laboratories is apparently a non-entity that is simply a brand name of Defendant L'Oréal S.A. . . . Thus[,] the Defendants collapse back into L'Oréal S.A."). Consequently, assessment of personal jurisdiction focuses only on L'Oréal S.A.

Plaintiff is a successful Canadian cosmetic and pharmaceutical company that owns the following two patents at issue: (1) Patent No. 9,821,005, issued by the U.S. Patent and Trademark Office ("USPTO") to plaintiff on November 21, 2017, for the formula of a gel containing specific percentages of bio-fermented sodium hyaluronate, hydroxyethylcellulose, polyethylene glycol, methylparaben, and water, Pls.' Compl. ("Compl."), ¶¶ 1, 12, 17, ECF No. 1; and (2) Patent No. 10,322,142, issued by USPTO to plaintiff on June 18, 2019, for the formula of a polymer matrix composed of specific percentages of bio-fermented sodium hyaluronate, non-ionic polymer, polyethylene glycol, and water, along with the inclusion "of an active therapeutic ingredient in addition to the Hyaluronic Acid," *id.* ¶¶ 1, 13, 18.  Both patents expire on August 5, 2035.  *Id.* ¶ 13.

L'Oréal S.A., a corporation with its principal place of business and headquarters in Clichy, France, allegedly sells and distributes products using formulas similar to those that plaintiff has patented.  *See Id.* ¶ 3, 19.  Specifically, L'Oréal S.A. manufactures, distributes, and sells three cosmetics under the name Revitalift, which "contain high concentrations of Hyaluronic Acid in a Polymer matrix which includes a non-ionic polymer and are formulations that have all of the elements of one or more of the claims of the Glyco Patents and/or have formulae that are equivalent to the claimed formulas." *Id.* ¶ 14.  Likewise, "Vichy manufactures and sells" three products under the name "Liftactiv," each "contain[ing] high concentrations of Hyaluronic Acid in a Polymer matrix which includes a non-ionic polymer and are formulations that have all of the elements of one or more of the claims of the Glyco Patents and/or have formulae that are equivalent to the claimed formulas." *Id.* ¶ 15.

L'Oréal S.A. sells and distributes these products in the United States, including in the District of Columbia, exclusively through L'Oréal d/b/a L'Oréal USA ("L'Oréal USA").  *See id.*

¶¶ 3–4, 6.  Apart from the contacts of L'Oréal USA, the only other contact that L'Oréal S.A. has in the United States is allegedly that an "Assistant Vice President – DIPI International Head of Instrumental Cosmetics & Digital," named Dr. Roy P. Diaz, works out of an office located at 111 Terminal Avenue in Clark, New Jersey.  Pl.'s Opp'n, Ex. C at 1 (Email, dated on March 22, 2022, to plaintiff's representative from Dr. Diaz with the latter's job title and office address in the signature block of the email) ("Diaz Email"), ECF No. 22-1.

### B.  Procedural Background

In an effort to resolve the dispute amicably, plaintiff contacted and presented the two patent licenses at issue to L'Oréal S.A., with a request that defendant stop selling the allegedly patent-infringing products.  *See* Compl. ¶¶ 16, 24, 30, 36, 40.  L'Oréal S.A. declined the request, *see id.*, prompting plaintiff to initiate the instant lawsuit, claiming that defendants willfully infringed both patents.  *Id.* at 10, ¶¶ A-G.  Plaintiff seeks a permanent injunction, compensatory damages, enhanced damages, attorneys' fees, prejudgment interest, and post judgment interest.  *Id.* at 10, ¶¶ H-M.

Defendants timely moved to dismiss for lack of personal jurisdiction, improper service, and improper venue, *see* Defs.' Mot. to Dismiss ("Defs.' Mot"), ECF No. 10, which motion plaintiff opposes, *see* Pl.'s Opp'n to. Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 12.  With briefing completed, *see* Defs.' Reply Mem. in Supp. Mot. to Dismiss ("Defs.' Reply"), ECF No. 13, defendants' motion is now ripe for resolution.

## II.   LEGAL STANDARD

"Personal jurisdiction is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'"  *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1086 (D.C. Cir. 2007) (alteration in original) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)).  To survive a motion to dismiss for lack of personal

3

jurisdiction, under Federal Rule of Civil Procedure 12(b)(2), the plaintiff must "make a *prima facie* showing of the pertinent jurisdictional facts." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56–57 (D.C. Cir. 2017) (quoting *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)). The *prima facie* showing requires specific factual allegations connecting each defendant to the forum. *First Chi. Int'l*, 836 F.2d at 1378. While the complaint's factual allegations must be accepted as true, and all reasonable inferences must be drawn in plaintiff's favor, *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 861 (D.C. Cir. 2022), mere conclusory statements and bare allegations are insufficient, *Livnat*, 851 F.3d at 57.

Unlike on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Indeed, jurisdictional arguments may be premised on the "pleadings, bolstered by such affidavits and other written materials as [the parties] can otherwise obtain." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). "When deciding personal jurisdiction without an evidentiary hearing—as here—the 'court must resolve factual disputes in favor of the plaintiff.'" *Livnat*, 851 F.3d at 57 (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)). The Court, however, "'need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts.'" *Id.* (quoting *Helmer*, 393 F.3d at 209).

### III. DISCUSSION

Defendants argue that the Court lacks the power to adjudicate this dispute because L'Oréal S.A. is a foreign company whose contacts in the United States are solely through L'Oréal USA, which operates as a separate legal entity and is not a party to the lawsuit. According to defendants,

4

L'Oréal S.A. lacks the requisite minimum contacts in the United States to satisfy the requirements for personal jurisdiction under the Fifth Amendment's Due Process Clause. Mot. at 6; Reply at 5; *see also* U.S. CONST. amend. V.[2]  Defendants are right.

It is hornbook law that "a defendant outside a forum's borders may be subject to suit" only if the defendant has "'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Livnat v*, 851 F.3d at 48 (quotation marks omitted) (quoting *Int'l Shoe Co. v. Wa.*, 326 U.S. 310, 316 (1945)).  The D.C. Circuit has further "explained that the Fifth Amendment's Due Process Clause protects defendants from being subject to the binding judgments of a forum with which they have established no meaningful contacts, ties, or relations, and requires fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Id.* (cleaned up).

"The traditional personal jurisdiction analysis asks first whether an applicable long-arm statute authorizes the court to hear the case, and second whether doing so comports with due process." *Atchley v. AstraZeneca UK LTD*, 22 F.4th 204, 231 (D.C. Cir. 2022).  Plaintiff's claim of specific jurisdiction is premised on Federal Rule of Civil Procedure 4(k)(2), which provides as to claims arising under federal law that "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." FED. R. CIV. P. 4(k)(2).  In this way, Rule 4(k)(2) operates "essentially [as] a federal long arm-statute." *Atchley*, 22 F.4th at 232 (cleaned up).  When Rule 4(k)(2) is invoked as the basis for the exercise of personal jurisdiction over a defendant not subject

---

[2] Defendants also argue that venue is improper and plaintiff's attempts at service is insufficient, Defs.'Mot. at 6–9, but these alternative arguments need not be reached because this motion is resolved on personal jurisdiction grounds.

to jurisdiction in any state's courts of general jurisdiction, the relevant question is "whether a defendant has sufficient contacts with the United States as a whole to justify the exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment." *Mwani*, 417 F.3d at 11; *see also Atchley*, 22 F.4th at 232 (quotation marks omitted) ("Besides proper service of process, [Rule 4(k)(2)] requires only that jurisdiction be consistent with the United States Constitution and laws."). "Apart from the scope of the forum and potential federalism considerations, the Fifth and Fourteenth Amendment Due Process inquiries are generally analogous." *Atchley*, 22 F.4th at 232; *see also Livnat*, 851 F.3d at 54 (explaining that "the Supreme Court and this court have applied Fourteenth Amendment's personal-jurisdictional standards in Fifth Amendment cases"); *but see Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1783–84 (2017) ("[W]e leave open the question whether the Fifth Amendment imposes the same restrictions [as the Due Process Clause of the Fourteenth Amendment] on the exercise of personal jurisdiction by a federal court.").

"The Supreme Court has developed two distinct analyses of the circumstances in which a forum state may, consistent with due process, authorize its courts to exercise contact-based personal jurisdiction over a defendant[:]" general jurisdiction and specific jurisdiction. *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021). General jurisdiction, which "'permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit[,]'" *Livnat*, 851 F.3d at 56 (quoting *Walden*, 571 U.S. at 283 n.6), is only established when a plaintiff has shown that the defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State[,]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation marks omitted). Plaintiff does not argue that general jurisdiction may be exercised over L'Oréal S.A., *see* Pl.'s

Opp'n at 4–6, leaving the sole issue of whether the requirements for specific jurisdiction are satisfied.

Unlike general jurisdiction, specific jurisdiction is based on "acts of a defendant that touch and concern the forum." *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 928 (D.C. Cir. 1981); *see also Ford Motor Co. v. Montana Eighth Judicial District*, 141 S.Ct. 1017, 1031 (2021) (alteration in original) (explaining that specific jurisdiction "covers defendants less intimately connected with a [forum], but only as to a narrower class of claims"). The "'essential foundation of specific jurisdiction' is the 'relationship among the defendant, the forum, and the litigation.'" *Atchley*, 22 F.4th at 234 (quotation marks omitted) (quoting *Ford*, 141 S. Ct. at 1028). To show that the court's exercise of specific jurisdiction over the defendant satisfies due process, plaintiff must establish the following: "(1) minimum contacts demonstrating that the defendant[s] purposefully availed [themselves] of the forum; (2) relatedness between the contacts and the claim; and (3) compliance with 'fair play and substantial justice.'" *Id.* "These rules derive from and reflect two sets of values—treating defendants fairly and protecting interstate federalism." *Ford Motor Co.*, 141 S. Ct. at 1025 (quotation marks omitted). Additionally, "[p]leading specific personal jurisdiction under Rule 4(k)(2) requires demonstrating a close nexus between the United States, the foreign defendant's conduct, and the plaintiff's claim." *Bernhardt*, 47 F.4th at 864.

As a threshold matter, the parties dispute whether L'Oréal USA's contacts in the United States may be imputed to L'Oréal S.A. "Ordinarily, a defendant corporation's contacts with a forum may not be attributed to affiliated corporations." *Johnson-Tanner v. First Cash Fin. Servs., Inc.*, 239 F. Supp. 2d 34, 38 (D.D.C. 2003). To tie a parent corporation's contacts to its subsidiary, the plaintiff must demonstrate that the corporate veil between the parent and the subsidiary's veil should be pierced, at least for jurisdictional purposes. *Goodyear*, 564 U.S. at 930; *see also I.A.M.*

*Nat. Pension Fund, Ben. Plan A v. Wakefield Indus., Div. of Capehart Corp.*, 699 F.2d 1254, 1259 (D.C. Cir. 1983) (explaining that "where the two corporations are not really separate entities[,] service on the parent will reach a foreign subsidiary"). "Whether one corporation is the alter ego of another is a question of law to be decided by the court." *Johnson-Tanner*, 239 F. Supp. 2d at 38. In other words, a plaintiff must show by affirmative evidence the following: "(1) is there such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist?; and (2) if the acts are treated as those of the corporation alone, will an inequitable result follow?" *Labadie Coal Co. v. Black*, 672 F.2d 92, 97 (D.C. Cir. 1982).

Plaintiff makes only a feeble effort to show that either requirement for alter ego liability is satisfied. In plaintiff's view, the single allegation that "L'Oréal SA is the developer, formulator[,] and primary manufacturer of the accused products and that L'Oréal USA receives at least components and the final formulated product from L'Oréal S.A." suffices to support the exercise of "jurisdiction and venue in a patent infringement" action. Pl.'s Opp'n at 5–6. This conclusory allegation is insufficient to demonstrate that L'Oréal S.A. "so dominated [L'Oréal USA] . . . as to negate its separate personality." *Hart v. Dep't of Agric.*, 112 F.3d 1228, 1231 (D.C. Cir. 1997) (quotation marks omitted). Plaintiff has not otherwise explained how the two-pronged inquiry in *Labadie Coal Company* for piercing the corporate veil between L'Oréal S.A. and L'Oréal USA, and attributing the latter's contacts to the former, is met, particularly when set against the thorough declaration submitted by defendants describing the independence of the two companies. *See, e.g., BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 83 (D.D.C. 2003) ("[Plaintiff] produces no evidence to counter the sworn affidavits submitted by Telia that there are no shared officers or directors between Telia and TICI, financial records and account books are maintained separately, and Telia has no role in TICI's day-to-day operations or corporate governance. . . . The mere

corporate relationship between Telia and TICI, without more, does not suffice."); *United States ex. rel. Scollick v. Narula*, 215 F. Supp. 3d 26, 37 (D.D.C. 2016) (citation omitted) ("With regard to all the alleged alter ego relationships, plaintiff relator states that the defendants 'have such a unity of interest and ownership that the individuality of each entity ceased and they functioned as a single entity.' This is a legal conclusion insufficient to state a claim for relief.").

Defendants explain, in a declaration from L'Oréal USA's Senior Vice President of Finance, Roy Rabinowitz, that L'Oréal USA "makes stringent efforts to observe standard corporate formalities."  Defs.' Mot., Ex. 1, Declaration of Roy Rabinowitz ("Rabinowitz Decl.") ¶ 5, ECF No. 10-1; *see also id*. at 5.  This declaration further states that, "while L'Oréal USA keeps L'Oréal S.A. informed about major issues and receives overall strategic guidance from L'Oréal S.A., it operates independently from its parent," Rabinowitz Decl. ¶ 5, providing as specific examples of such independence between the companies that "L'Oréal USA maintains separate licensing and distribution contracts, manufactures and distributes its own products, has its own board of directors, issues separate financial statements, files separate tax returns, and maintains a workforce separate from L'Oréal S.A.," as well as "its own departments in areas such as finance, human resources, legal, corporate communications, customer relations, Research and Innovation, and marketing and advertising."  *Id*.  Plaintiff makes no effort to rebut the Rabinowitz Declaration's observation that the corporate formalities between L'Oréal S.A. and L'Oréal USA are rigorously observed, which confirms that the corporate veil between the two corporate entities has not and may not be breached such that L'Oréal USA's contacts can be attributed to L'Oréal S.A.

Stripped of the domestic subsidiary's contacts, L'Oréal S.A.'s sole contact in the United States is, allegedly, that Mr. Diaz, L'Oréal S.A.'s "Assistant Vice President - DIPI International Head of Instrumental Cosmetics & Digital," works out of an office based in New Jersey, and

9

plaintiff's additional allegation that "Mr. Diaz [presumably] has a staff and that other employees are also located in the New Jersey facility." Pl.'s Opp'n at 6. Nothing in the Diaz Email cited by plaintiff shows, however, that Mr. Diaz works for L'Oréal S.A.; instead, his signature block merely mentions that he works for "L'ORÉAL Research & Innovation" at 111 Terminal Avenue in Clark, New Jersey, which, as the Rabinowitz Declaration clarifies, is a facility "owned and operated by L'Oréal USA," Rabinowitz Decl. ¶ 7. Furthermore, Dr. Roy Diaz attests in his declaration that he is an employee of L'Oréal USA, not L'Oréal S.A. Defs.' Reply, Ex. 1, Declaration of Dr. Roy Diaz ¶ 3 ("I have never been employed by L'Oréal S.A. and have never been an officer of that company. Since September of 2014, I have been employed by L'Oréal USA[.]"), ECF No. 13-1.

Even assuming that L'Oréal S.A. does have an office in New Jersey, *and* that Mr. Diaz works for L'Oréal S.A., rather than L'Oréal USA (which plaintiff has not shown), plaintiff does not explain how that this singular office in one state is enough to evince that L'Oréal S.A. has "avail[ed] itself of the privilege of conducting activities within the forum[.]" *Ford*, 141 S. Ct. at 1024 (quotation marks omitted). For example, plaintiff has not shown how large this office is, how many employees work at this office, or what this office even does for L'Oréal S.A.'s business. Plaintiff's conclusory inference that Mr. Diaz presumably has a staff and employees need not be accepted either. *See Helmer*, 393 F.3d at 209 (explaining that the court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts" when deciding personal jurisdiction without an evidentiary hearing). L'Oréal S.A. does not have sufficient minimum contacts in the United States to satisfy the requirements for due process.

In addition to flunking the minimum contacts requirement, plaintiff has not explained how L'Oréal S.A.'s presumed single employee in a single office is connected to its claim of patent infringement, or how exercising specific jurisdiction on either defendant would comport with

10

"traditional notions of fair play and substantial justice." Plaintiff's only relevant argument to the relatedness inquiry is that "[o]ther relevant employees frequent the United States for business purposes related to the subject matter of this suit." Pl.'s Opp'n at 6. Even if true, plaintiff's argument is far too general since the mere fact that some L'Oréal S.A. employees, who work on the general "subject matter" of patents, "frequent" the United States falls well short of satisfying the relatedness inquiry. *See Berhnardt*, 47 F.4th at 864 ("Pleading specific personal jurisdiction under Rule 4(k)(2) requires demonstrating a close nexus between the United States, the foreign defendant's conduct, and the plaintiff's claim."); *see also Livnet*, 851 F.3d at (holding that, in a lawsuit seeking to hold the Palestinian Authority vicariously liable for an armed attack at a holy site in the West Bank, the plaintiff's "declaration from a professor asserting that the Palestinian Authority encourages terrorism against Jews and Israelis in order to influence U.S. policy in the Palestinian Authority's favor . . . establishe[d] no link between that practice and the . . . attack"). Plaintiff's abbreviated briefing on this point, *see* Pl.'s Opp'n at 4–6, can only be explained by its flawed legal assumption that L'Oréal USA's contacts may be automatically imputed to L'Oréal S.A, s*ee id.* at 6 ("L'Oréal S.A. sells accused products into and in the United States, directly and through its wholly owned subsidiary, that is sufficient for and venue in a patent infringement suit."), an assumption that is inconsistent with governing law on imputing a subsidiary's contacts to its parent.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, L'Oréal USA's contacts cannot be imputed to L'Oréal S.A., and plaintiff has failed to demonstrate that exercising personal jurisdiction over L'Oréal S.A. would satisfy the requirements of the Fifth Amendment's Due Process Clause. Accordingly, it is hereby

**ORDERED** that defendant's Motion to Dismiss, ECF No. 19, is **GRANTED**; it is further

**ORDERED** that the plaintiff's complaint is dismissed, without prejudice, for lack of personal jurisdiction over defendants; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED**.

Date: January 11, 2023

_____

BERYL A. HOWELL

Chief Judge